BURKE, P. J.
 

 On September 7, 1960, the City of Commerce as plaintiff filed its petition in the superior court for writ of mandate directed to the State Board of Equalization seeking an order that the State Board make a fair and reasonable apportionment of sales and use tax moneys it collected from retailers in the City of Commerce. The apportionment sought pertained to taxes collected for the first quarter of 1960 and attributable to the period January 31, 1960, to and including March 31, 1960. An alternative writ of mandate was issued. The County of Los Angeles (hereinafter termed the “County”) was named in the petition as the real party in interest and made its return to the alternative writ by way of answer as did the defendant State Board of Equalization (hereinafter termed the “State Board”). Following a hearing on the merits, the trial judge held in favor of the position taken by the State Board and the County and against the contentions of the City. Judgment was entered denying the petition for writ of mandate from which the City appeals.
 

 . On February 28, 1956, the Board of Supervisors of the
 
 *389
 
 County adopted a uniform local sales and use tax ordinance, pursuant to the Bradley-Burns Law (Rev. & Tax. Code, § 7200 et seq.). The County contracted with the State Board to perform all functions incident to the administration and operation of the ordinance in accordance with the terms of the Bradley-Burns Law.
 

 The City of Commerce (hereinafter termed the “City”) was incorporated on January 28, 1960. On that day its city council adopted Ordinance No. 2 providing for the imposition of a sales and use tax upon retailers within the City. On that same day the city council adopted a resolution authorizing the mayor to execute a specified contract with the State Board to provide for the administration and operation of the local sales and use taxes imposed by the city. The mayor executed the contract on January 28, 1960, and on the following day it was personally delivered in Sacramento and signed by the secretary of the State Board. On January 29, 1960, it was delivered to the Department of Finance for its approval. The contract was approved by the Department of Finance on February 15, 1960.
 

 In Ordinance No. 2 (hereinafter referred to as “the ordinance”) the city council declared that its purpose was to adopt a sales and use tax pursuant to the provisions of the “Bradley-Burns Law” referred to above. The ordinance also recited that it was the purpose of the council that the tax be administered by the State Board “in a manner that adapts itself as fully as practical to, and requires the least possible deviation from, the existing statutory and administrative procedures followed by the State Board of Equalization in Administering and Collecting the California State Sales and Use Taxes.”
 

 Section 6102 of the ordinance reads in part as follows: “This Ordinance shall become operative on the 31st day of January, 1960, and prior thereto this City shall contract with the State Board of Equalization to perform all functions incident to the administration and operation of this sales and use tax Ordinance; provided, that if this City shall not have contracted with the said State Board of Equalization, as above set forth, prior to January 31, 1960, this Ordinance shall not be operative until the first day of the calendar quarter following the execution of such a contract by the City and by the State Board of Equalization, ...”
 

 The most pertinent provisions of the contract entered into
 
 *390
 
 between the City and the State Board provided: “The date of this Agreement is the date on which it is approved by the State Department of Finance. The Agreement shall take effect on the first day of the calendar quarter next succeeding the date of such approval, but in no case before the operative date of the City ordinance, nor on a day other than the first day of a calendar quarter.”
 

 It is the contention of the City that it contracted with the State Board of Equalization on January 29, I960; therefore, the ordinance became effective on January 31, 1960, and imposed a tax upon the retailers within the City which the retailers could claim as a credit against the tax imposed by the County. The City asserts that all money collected by the State Board which is attributable or allocable to the period beginning January 31,1960, should have been paid to the City pursuant to section 7204 of the Revenue and Taxation Code.
 

 The State Board and the County take the position that the City did not contract with the State Board until February 15, 1960, and in any event, under the provisions of article V, paragraph B, of the sales tax contract, the State Board was only required to administer the sales and use tax with respect to sales occurring after April 1, 1960. The State Board began collecting taxes for the City as of April 1, 1960, and the City makes no claim for any local sales and use taxes paid prior to April 1,1960.
 

 Under the contract the State Board has administered and remitted to the City taxes on sales (literally measured by gross receipts from sales but for convenience only termed “taxes on sales”) occurring on and after April 1, 1960. Both the State Board and the County take the position that taxes on sales occurring between January 31, 1960, and March 31, 1960, whenever paid, belong to the County, and this was the view taken by the trial court.
 

 The Bradley-Burns law conferred upon counties the authority to impose a local sales and use tax. It does not confer any taxing power upon cities. The power of the city to impose such tax for revenue purposes is derived from section 37101 of the Government Code and is a power which cities have had long before the adoption of the Bradley-Burns Law. The major purpose of the Bradley-Burns Law, as it applies to cities, is to provide a plan of state administration to relieve the cities from the burden of operating their own collection system.
 

 
 *391
 
 As stated in
 
 Geiger
 
 v.
 
 Board of Supervisors,
 
 48 Cal.2d 832, 837 [313 P.2d 545], “The act contemplates an integrated, uniform system of city and county sales and use taxation. The counties are given authority to impose sales and use taxes as a means of raising additional revenue, and the cities are furnished with a plan of state administration which will relieve them from operating collection systems of their own. The taxpayers will receive the benefit of a scheme which will free them from the burden of complying with differing regulations of state and local taxes, avoid the necessity of making payments and reports to several governmental bodies, and permit all auditing to be done by a single agency.”
 

 Normally a city ordinance becomes effective 30 days following its adoption (Govt. Code, § 36937); however, the ordinance before us here is one relating to taxes for the usual and current expenses of the City, and pursuant to Government Code section 36937, subdivision (d) becomes effective immediately upon its adoption.
 

 It will be seen that the ordinance was to become operative on January 31, 1960, provided the City and the State Board “contracted” to perform the functions of administering the tax for the City “prior to January 30, 1960.” The City contends that the word “contracted” meant the
 
 execution
 
 of the sales tax contract and that it was not used with reference to any subsequent approval of the executed contract by the Department of Finance. It was clear from its wording of the ordinance that the City intended that the tax should take effect January 31, 1960. However, whether this intention was accomplished is affected by the provisions of Government Code section 13370 which binds one of the parties to the contract, namely, the State Board. This section requires that all contracts entered into by any state agency for the performance of work or services “. . . are of no effect unless and until approved by the Department of Finance.” It further provides that every such contract “. . . if approved by the department, shall be effective from the date of such approval.”
 

 It thus appears quite clear under the law, as found by the trial court, that the contract became effective upon its approval by the Department of Finance February 15, 1960. Since it did not take effect prior to January 31, 1960, then under the terms of the ordinance the ordinance itself did not become operative until April 1, 1960, the first day of the calendar quarter following the execution of the contract.
 

 
 *392
 
 The court further found that: “. . . at all times the [State] Board intended the aforesaid contract to operate uniformly with its other similar contracts, that is, to administer and collect taxes on only those sales occurring on and after the first day of the calendar quarter next succeeding the effective date of the City’s Ordinance, and the City, by and through its agents and employees, knew of this intention of the Board before and at all times after the adoption of Ordinance No. 2 of the City.”
 

 The City asserts that on seven prior occasions the State Board was instrumental in having sales tax contracts “backdated” by the department, with the result that such contracts were given full force and effect by the State Board prior to the time they were submitted to the Department of Finance for approval and that no sound reason exists why the same result should not have been reached in this case. The City points out that the sales tax contract is nothing more than a “form” contract; that this “form” contract has in fact been approved by the Department of Finance and that many contracts identical in form and substance have been approved by that department on over four hundred occasions; that none similar in form has been disapproved by the department; and finally that the department itself was instrumental in the drafting of the terms and provisions of the model sales tax contract.
 

 The State Board, on the other hand, asserts that in none of the contracts entered into under the Bradley-Burns Law has the administration of the collection and remitting of taxes for cities or counties commenced on any day other than the first day of the first calendar quarter commencing after the approval of such contracts. It asserts that the efficient administration of sales tax requires adherence to a schedule and also requires performance of administrative duties in advance of the end of the period for which the taxes are returned.
 

 It is pointed out that the contract form used was drafted by the joint efforts of representatives of the League of California Cities, County Supervisors Association, the State Board, Department of Finance, the Controller and the Attorney General. It would appear from the declared purpose of the City in the enactment of its ordinance that it had never intended that the State Board deviate from “the existing statutory and administrative procedures followed by [it] in administering and collecting . . . sales and use taxes.”
 

 The City argues that tacit or implied approval of the con
 
 *393
 
 tract is sufficient.
 
 (State Board of Education
 
 v.
 
 Levit,
 
 52 Cal.2d 441, 458 [343 P.2d 8].) However, the clear and unambiguous provision of the sales tax contract between the State Board and the City provided specifically that the date of the contract “is the date on which it is approved by the State Department of Finance.” The contract further provides “The Agreement shall take effect on the first day of the calendar quarter next succeeding the date of such approval, ...”
 

 The argument of the City that the entire cost of collection to the State Board is paid from the taxes collected and that no expenditure of state money is involved, as well as the other arguments advanced, in no way negates the plain language of the agreement itself.
 

 The City next asserts that assuming the correct effective date of the contract is April 1, 1960, it is entitled to receive its share of the sales taxes collected by the State Board after April 1, 1960, even though the sales were made during the period between January 31 and March 31, 1960. The State Board and the County take the position that the City is entitled only to the portion of such taxes on sales made after April 1,1960.
 

 We believe in accordance with the finding of the trial court that the City is entitled to its share of the taxes imposed on sales which occurred from and after April 1, 1960. Under our interpretation the operative date of the ordinance is April 1, 1960, “the first day of the calendar quarter following the execution of” the contract. The City clearly would not be entitled to any taxes collected by the State Board after April 1 for any period of time preceding that date since the City had not imposed any sales tax prior to that date.
 

 In its closing brief the City points to certain practices which it asserts were followed by the State Board with respect to annexations of territory and the allocation of sales taxes .following such annexations. We deem none of these considerations pertinent to the issues before this court.
 

 The judgment is affirmed.
 

 Jefferson, J., and Balthis, J., concurred.