[S.F. No. 22810. In Bank. Nov. 29, 1971.]

SOPHIE RIVERA et al., Plaintiffs and Appellants, v.
CITY OF FRESNO et al., Defendants and Respondents.

**134**

## COUNSEL

J. W. Hedrick, Jr., Loeb & Loeb, Frank M. Keesling, Albert F. Smith, John S. Warren and Terry D. Oehler for Plaintiffs and Appellants.

Joseph W. Cotchett, Hafif & Shernoff, Stephen L. Odgers, Herbert Hafif, P. M. Barceloux, Burton J. Goldstein, Albert E. Levy, Ralph Golub, Goldstein, Barceloux & Goldstein and M. Reed Hunter as Amici Curiae on behalf of Plaintiffs and Appellants.

Spencer Thomas, Jr., City Attorney, A. Grant Macomber, Senior Deputy City Attorney, Sturgis, Den-Dulk, Douglass & Anderson and Robert T. Anderson for Defendants and Respondents.

Roger Arnebergh, City Attorney (Los Angeles), James A. Doherty and Thomas C. Bonaventura, Assistant City Attorneys, as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**BURKE, J.**—Plaintiffs, who are utility users in defendant City of Fresno, appeal from a judgment sustaining the validity of a utility users' tax levied by the city. We are informed that a similar tax has been imposed by some

40 or more cities in this state. As will appear, we have concluded that plaintiffs err in their contention that the city lacked authority to impose the tax. The judgment will therefore be affirmed.

The utility users' tax ordinance here at issue (Fresno Municipal Code, §§ 4-1001 through 4-1017) imposes a tax (with exceptions not here material) "upon every person using intrastate telephone communication service" in defendant city, and "upon every person using gas in the city which is delivered through mains or pipes, and every person using electrical energy in the city." The tax is at the rate of 5 percent of the total charges made for the utility service, is collected from the user by the utility company supplying the particular utility service as part of its regular billing, and is paid over to the city by the utility company. Procedures for administration of the tax ordinance are set forth in the Fresno Municipal Code.

The City of Fresno operates under a charter which contains "home rule" provisions authorized by the Constitution. (Cal. Const., art. XI, § 5; formerly §§ 6, 8, subd. (j).) Accordingly, the city is empowered to exercise full control over its municipal affairs, unaffected by general laws on the same subject matters and subject only to limitations found in the Constitution and the city charter. (*Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 291 [32 Cal.Rptr. 830, 384 P.2d 158]; *Los Angeles Ry. Corp.* v. *Los Angeles* (1940) 16 Cal.2d 779, 783 [108 P.2d 430]; *The City of Oakland* v. *Williams* (1940) 15 Cal.2d 542, 549-550 [103 P.2d 168]; *West Coast Adver. Co.* v. *San Francisco* (1939) 14 Cal.2d 516, 521-522 [95 P.2d 138]; *Butterworth* v. *Boyd* (1938) 12 Cal. 2d 140, 146-147 [82 P.2d 434, 126 A.L.R. 838].)

Plaintiffs contend, however, that the Legislature has enacted a uniform statewide system of sales and use taxation and has declared its intent to preempt that field, that such a system is a matter of statewide concern rather than a local municipal affair, and that therefore the Fresno utility users' tax must yield to the Legislature's enactment under principles recently reviewed and expounded in *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61-63 [81 Cal.Rptr. 465, 460 P.2d 137]. (See also *City of Santa Clara* v. *Von Raesfeld* (1970) 3 Cal.3d 239, 245-246 [90 Cal.Rptr. 8, 474 P.2d 976].)

The state entered the field of sales and use taxes more than 35 years ago with the enactment of the Retail Sales Tax Act of 1933 (Stats. 1933, ch. 1020, § 1, p. 2599), and the Use Tax Act of 1935. (Stats. 1935, ch. 361, § 1, p. 1297.) Certain cities in the state subsequently began imposing similar taxes, at varying rates, with express approval of the Legislature.

(See Gov. Code, § 37101; *City of Commerce* v. *State Board of Equalization* (1962) 205 Cal.App.2d 387, 390 [23 Cal.Rptr. 143] [3, 4].)

In 1955 the Legislature enacted a uniform local sales and use tax law, known as the Bradley-Burns Act. (Rev. & Tax. Code, § 7200 et seq.)[1] It confers upon counties the authority to impose by local ordinance a sales and use tax, and directs that the county must credit against the amount of the county tax the amount of sales and use taxes due to cities within county boundaries under city tax ordinances having substantially the same provisions. Among the provisions required in a county ordinance, and in the sales and use tax ordinance of a city if those paying the city tax are to be entitled to credit against the county tax, are these: (1) the local tax rate shall not exceed 1 percent; (2) provisions identical (with minor exceptions not here material) to those in the state sales and use tax acts; (3) a provision that the county or the city, as the case may be, "shall contract prior to the effective date of the [local] sales and use tax ordinance with the State Board of Equalization to perform all functions incident to the administration or operation of the [local] sales and use tax ordinance." (§ 7202, subds. (a), (b), (c), (d) and (h), subsecs. (1), (2), (3), (4); § 7203.)

The Bradley-Burns Act "contemplates an integrated, uniform system of city and county sales and use taxation. The counties are given authority to impose sales and use taxes as a means of raising additional revenue, and the cities are furnished with a plan of state administration which will relieve them from operating collection systems of their own. The taxpayers will receive the benefit of a scheme which will free them from the burden of complying with differing regulations of state and local taxes, avoid the necessity of making payments and reports to several governmental bodies, and permit all auditing to be done by a single agency." (*Geiger* v. *Board of Supervisors* (1957) 48 Cal.2d 832, 837 [313 P.2d 545].)

In due course, both the County of Fresno and the City of Fresno adopted ordinances imposing sales and use taxes in accordance with the Bradley-Burns Act, and entered into contracts with the State Board of Equalization for administration of those taxes. Thereafter, in 1968, the City of Fresno enacted the utility users' tax now under challenge.

Also in 1968, the Legislature added a further provision to the Bradley-Burns Act in the form of section 7203.5 of the Revenue and Taxation Code.[2] So far as here material, section 7203.5 (in its second par.) prohibits

---

[1]Section references hereinafter are to the Revenue and Taxation Code unless otherwise indicated.

[2]Section 7203.5 in pertinent part: "[2d par.] Except as herein provided, the State Board of Equalization shall not administer any sales or use tax ordinance of a city,

the State Board of Equalization from administering any sales or use tax ordinance of any city or county which imposes a sales or use tax in addition to those conforming to the Bradley-Burns Act, but the section further specifies (in its third and final par.) that nothing therein prohibits a city or county from levying "any other substantially different tax" authorized by the California Constitution or by statute or city charter.

The bill which added the above section to the Revenue and Taxation Code became chapter 1265, Statutes of 1968. It set forth various findings of the Legislature which noted inter alia[3] that "the state must rely on sales and use taxes as its chief source of revenue," and declared the desirability of the integrated, uniform system of city and county sales and use taxation contemplated by the Bradley-Burns Act. The bill concludes with the statement: "Therefore, the Legislature declares that the state, by enactment of the Sales and Use Tax Law, and the Bradley-Burns Uniform Local Sales and Use Tax Law, has preempted this area of taxation." (Stats. 1968, ch. 1265, p. 2388, § 2.) Plaintiffs rely upon the last-quoted statement in support of their contention that the Legislature has preempted the field of sales and use taxation.

Defendant city contends that the power of a home rule charter city to impose taxes for revenue purposes is strictly a municipal affair pursuant to the direct constitutional home rule grant, and that the restrictions on the exercise of that power are only the limitations and restrictions appearing in the Constitution and in the charter itself. The defendant asserts that it is not disputed that the tax here involved was imposed for revenue purposes only. However, we are not required to reach the issue of preemption[4] in deciding the case before us. ■ Defendant city correctly urges that its utility users' tax is a "substantially different tax" from the sales and use taxes to which the Bradley-Burns Act refers (see final par. of § 7203.5, fn. 2, *ante*), and as such was expressly excepted by the Legislature from purview of Bradley-Burns as well as from the declared state preemption of the field by enactment of that act and of the state sales and use tax acts.

■ As stated in *Bank of America* v. *State Bd. of Equal.* (1962) 209

county or city and county, if such [ordinance] imposes a sales or use tax in addition to the sales and use taxes imposed under an ordinance conforming to (the state sales and use tax acts).

"[3d & final par.] Nothing in this section shall be construed as prohibiting the levy or collection by a city, county or city and county of any other substantially different tax authorized by the Constitution of California or by statute or by the charter of any charter city."

[3]The full text of the Legislature's findings appears as a historical note following section 7203.5 in West's Annotated California Codes, as well as in the official statutes.

[4]See *Bishop* v. *City of San Jose,* 1 Cal.3d 56, 63 [81 Cal.Rptr. 465, 460 P.2d 137].

Cal.App.2d 780, 791 [26 Cal.Rptr. 348], one of the chief purposes of the use tax is to help retailers, who are subject to sales tax, to compete on an equal footing with their competitors outside of the taxing jurisdiction who are exempt from the sales tax. Thus it is intended to reach property purchased for use and storage in the taxing jurisdiction from retailers who, being outside such jurisdiction, are not subject to its laws. "It also seeks to reach such property where the taxable event of a sales tax, i.e., the sale, occurs outside of this state or where such property is immune from the sales tax because of the commerce clause. [Citations.] The use tax is complemental to the sales tax, and as such is intended to supplement the latter by imposing upon those subject to it a tax burden equivalent to the sales tax in order that tangible personal property sold or utilized in this state would be taxable once for the support of the state [or local] government. . . ." (*Bank of America* v. *State Bd. of Equal., supra,* pp. 791-792 of 209 Cal.App.2d)

 The state sales and use tax law and the local ordinances administered by the State Board of Equalization under the Bradley-Burns Act levy sales taxes on the privilege of selling tangible personal property at retail and use taxes on the storage, use, or other consumption of tangible personal property purchased from a retailer. (§§ 6051, 6201, 7202, 7203.) As stated, the utility users' tax now at issue imposes a tax upon the users of intrastate telephone services, of electrical energy, and of gas delivered through mains or pipes. Telephone service is plainly not tangible personal property, and at no time has the state imposed a sales or use tax on the sale or use of electricity or of gas delivered through mains or pipes. (§ 6353.) Accordingly, the Fresno utility users' tax must be deemed to fall within the concept of a "substantially different tax" excepted by the Legislature from the scope of Bradley-Burns and from the declaration of preemption found in Statutes 1968, chapter 1265, section 2.

This conclusion finds further support in the legislative history of the bill, originally known as Senate Bill 58, which became Statutes 1968, chapter 1265. When Senate Bill 58 was considered by the Legislature in 1968 business license taxes were being imposed by certain cities which were measured in part by the gross receipts from the sales of merchandise; also, at least one chartered city (Los Angeles) had levied a utility users' tax as well as a general sales and use tax which was in nonconformance to Bradley-Burns in that the rate imposed was higher than that approved by Bradley-Burns. As amended on July 9, 1968, Senate Bill 58 undertook in section 1 thereof to prohibit local sales or use taxes not in conformity with Bradley-Burns, but also specified that "Nothing in this section shall be construed as prohibiting the levy or collection of any otherwise author-

ized license tax upon a business measured by, or according to, gross receipts."

The next amendment to Senate Bill 58, on July 16, 1968, added after "gross receipts" the words "or as prohibiting any tax on public utility services." As amended in the Assembly on July 23, 1968, section 1 of the bill also added the language "or as prohibiting . . . any otherwise authorized excise tax upon the purchase of alcoholic beverages for consumption on the premises where sold."

By amendment on July 25, 1968, the language undertaking to prohibit nonconforming local sales and use taxes was deleted, and the bill simply declared that the State Board of Equalization should not administer a nonconforming local ordinance. The language of the paragraph commencing with the words "nothing in this section shall be construed as prohibiting . . . " was not substantially changed.

By amendment on July 30, 1968, slightly modified on July 31, the above paragraph was changed to the form in which it was finally enacted as the third and final paragraph of section 7203.5 of the Revenue and Taxation Code. (*Ante,* fn. 2.) Thereby, the language "substantially different tax" was substituted for the earlier specific enumeration of taxes which were not intended to be prohibited. It thus appears that the Legislature chose to employ the expression "substantially different tax" to refer to the taxes excluded from the restrictions of Bradley-Burns, rather than to attempt to specifically name such excluded taxes, lest the specification lead to the view that the prohibitions of section 7203.5 encompassed other permissible forms of local taxation not intended to fall within its scope. Accordingly, the utility users' tax was seemingly intended to be excluded from the restrictions of the Bradley-Burns Act.

█ It has been suggested on behalf of plaintiffs that the Fresno utility users' tax invades the field of regulation of public utilities which has been clearly preempted by the state under applicable provisions of the California Constitution. (Cal. Const., art. XII, §§ 22, 23.) However, whether or not the state has occupied the field of regulation, cities may levy fees or taxes solely for revenue purposes, as was done by the Fresno utility users' tax. (*In re Groves* (1960) 54 Cal.2d 154, 156-158 [4 Cal.Rptr. 844, 351 P.2d 1028], and citations.) Further, the requirement that the utility company supplying a particular utility service collect the utility users' tax and remit to the city does not constitute forbidden or conflicting regulation of the utility. (See *Ainsworth* v. *Bryant,* 34 Cal.2d 465, 476-477 [211 P.2d 564].)

*Century Plaza Hotel Co.* v. *City of Los Angeles* (1970) 7 Cal.App.3d

616 [87 Cal.Rptr. 166], is not helpful to plaintiffs. In that case, which held invalid a so-called "tipplers' tax" imposed by the City of Los Angeles upon the purchase price of alcoholic beverages sold by a retailer for consumption on the premises where sold, the court relied upon the inter-relationship of certain constitutional and statutory provisions not present in the instant case, and further specifically noted (p. 626 of 7 Cal.App.3d) that "Taxation and regulation of alcoholic beverages are intertwined."

 It is also appropriate to point out that the State Board of Equalization has continued to administer the local sales and use tax ordinances of the numerous cities which have also imposed utility users' taxes. **(5)** The contemporaneous administrative construction of a statute by an administrative agency charged with its enforcement and interpretation is entitled to great weight unless it is clearly erroneous or unauthorized. (*Cannon* v. *Industrial Acc. Comm.* (1959) 53 Cal.2d 17, 22 [346 P.2d 1]; *Coca-Cola Co.* v. *State Bd. of Equalization* (1945) 25 Cal.2d 918, 921 [156 P.2d 1].)

The judgment is affirmed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.