[L.A. No. 31967. Oct. 21, 1985.]

WALLACE BERRIE & COMPANY, INC., Plaintiff and Appellant, v. STATE BOARD OF EQUALIZATION, Defendant and Respondent.

62

## COUNSEL

Fierstein & Sturman, B. J. Adelson and Mark J. Linder for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Richard E. Nielsen for Defendant and Respondent.

## OPINION

**REYNOSO, J.**—Plaintiff Wallace Berrie & Company, Inc. (Berrie) appeals from a judgment denying recovery of certain taxes paid under protest.

The issue is whether a wholesaler must pay a use tax on product-oriented display racks it provides retailers "free" with a minimum purchase of the merchandise to be displayed. We conclude that the regulation imposing a use tax under these circumstances is valid and the tax must be paid.

The facts are uncontroverted. Berrie, a California corporation, purchases and sells wholesale novelty items, such as stuffed animals, humorous plaques and key chains. Berrie sells the items to retailers throughout the country. In its sales literature, Berrie offers the retailer a "free" disposable cardboard display rack, which advertises a single product line in an eye-catching manner, with a minimum purchase of the stuffed animals to be displayed. The only price stated is the price of the animals, which is the same, with or without the display rack. Retailers ordering multiples of the stated minimum do not necessarily receive more than one rack. Berrie rarely agrees to quantity discounts for its merchandise, and never gives a customer a discount in lieu of the display rack.

Berrie also offers the retailer a nondisposable wire rack for display of other Berrie novelties. The promotional literature states that this rack is

available for $24 or $45, depending on size, and comes with some "free" merchandise. The literature also specifies the number of free items included, as well as the regular price of these novelties.

When Berrie purchases the display racks it gives the manufacturer a certificate of resale, thereby avoiding liability for any tax at this point in the transaction. Berrie stores these marketing aids in its California warehouse, and carries them as inventory on its corporate books and records.

Berrie filed quarterly California sales and use tax returns for the years in question—1975 through 1977—but failed to account, in any way, for the display racks for which Berrie had earlier provided resale certificates. After conducting an audit for the three-year period, including an analysis of Berrie's sales literature, the State Board of Equalization (Board) notified Berrie that it was liable for sales tax on the wire display racks and for use tax on the cardboard display racks. The use tax was imposed because Berrie failed to satisfy the provisions of the Board's regulation governing sales of marketing aids. (Cal. Admin. Code, tit. 18, § 1670, subd. (c) (Regulation 1670(c).)[1] As Berrie had not billed customers for the cardboard rack nor raised the price of the merchandise delivered with it, transfer of the rack to the retailer could not be deemed a "sale."

At Berrie's request, the Board conducted a reaudit, ultimately setting the amount due at $39,671.22. Berrie paid the assessment under protest, and then submitted a claim for refund of $38,081.99, representing the use tax portion of the assessment. Berrie asserted that it had recouped more than 50 percent of the purchase price of the cardboard display racks, making transfers of the racks sales, even though Berrie apparently did not consider those transactions to be sales when it chose not to collect sales tax from the retailers who received the racks and failed to include liability for such taxes in its tax returns. The Board denied Berrie's claim.

---

[1] Regulation 1670(c) provides: "Marketing Aids. The tax applies to sales of advertising material, display cases, counter display cards, racks, and other similar marketing aids to persons acquiring such property for use in selling other property to customers. A marketing aid is deemed to be 'sold' if a consideration of at least equivalent to 50% of the purchase price of the aid is obtained from the customer, either by the making of a separate charge or by increasing the regular sales price of other merchandise sold to the customer and delivered with the marketing aid.

"Manufacturers or others who provide marketing aids to persons engaged in selling their products without obtaining reimbursement equivalent to 50% of the purchase price of the aid are deemed to be the consumers of the property provided. In such case the sales tax applies to the sale to or the use tax applies to the use by the manufacturer or other person purchasing the aid for distribution whether it is delivered directly to the person engaged in selling its product or is delivered to a distributor, wholesaler, or jobber for redelivery to such persons with 'deal merchandise.' Distributors, wholesalers, or jobbers are the retailers of aids which they 'sell' to persons engaged in marketing their products."

The trial court, sitting without a jury, ruled in favor of the Board. The court ruled that Regulation 1670(c)'s requirements are not "arbitrary, capricious or patently unreasonable" as they provide the objective criteria necessary for determining whether a marketing aid for which a resale certificate has been given is being sold or given away. As Berrie did not satisfy the regulation it was liable for the assessed use taxes, measured by the price Berrie originally paid for the racks.

I

We begin our discussion by reiterating the proper standard of review. Where the Board has not adopted a formal regulation addressing a particular tax question, its interpretation of the statutes and existing regulations in assessing taxes due is subject to broad judicial review. " 'The interpretation of a regulation, like the interpretation of a statute, is, of course, a question of law [citations], and while an administrative agency's interpretation of its own regulation obviously deserves great weight [citations], the ultimate resolution of such legal questions rests with the courts. [Citations.]' " (*Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 [130 Cal.Rptr. 321, 550 P.2d 593].)

When the validity of a formal regulation is attacked, however, a more limited standard of judicial review applies. "[I]n reviewing the legality of a regulation adopted pursuant to a delegation of legislative power, the judicial function is limited to determining whether the regulation (1) is 'within the scope of the authority conferred' (Gov. Code, § 11373) and (2) is 'reasonably necessary to effectuate the purpose of the statute' (Gov. Code, § 11374.)" (*Agricultural Labor Relations Board* v. *Superior Court* (1976) 16 Cal.3d 392, 411 [128 Cal.Rptr. 183, 546 P.2d 687].) "These issues do not present a matter for the independent judgment of an appellate tribunal; rather, both come to this court freighted with [a] strong presumption of regularity . . . ." (*Ralphs Grocery Co.* v. *Reimel* (1968) 69 Cal.2d 172, 175 [70 Cal.Rptr. 407, 444 P.2d 79].) Our inquiry necessarily is confined to the question whether the classification is "arbitrary, capricious or [without] reasonable or rational basis." (*Culligan, supra,* 17 Cal.3d at p. 93, fn. 4. See also *Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization* (1973) 30 Cal.App.3d 1009, 1020-1021 [106 Cal.Rptr. 867]; *Mission Pak Co.* v. *State Bd. of Equalization* (1972) 23 Cal.App.3d 120, 124-125 [100 Cal.Rptr. 69].)

Despite Berrie's efforts to characterize this case as a challenge to the Board's *interpretation* of a regulation, it is, in reality, a facial attack on the regulation itself. (*Post,* fn. 13.) Regulation 1670(c) classifies the transfer

of a marketing aid as a sale or as a use depending upon the structure of the transaction. Berrie asserts that the structure of the transaction should not be controlling. Because Berrie questions the validity of the regulation itself,[2] the proper standard of review is whether Regulation 1670(c) is arbitrary, capricious or without rational basis.

Having identified the relevant standard of review, we briefly turn to the purposes and structure of the sales and use tax law upon which Regulation 1670(c) is based. ■ The California Sales and Use Tax Law (Rev. & Tax. Code, § 6001 et seq.)[3] embodies a comprehensive tax system created to impose an excise tax, for the support of state and local government, on the sale, use, storage or consumption of tangible personal property within the state. (See *Douglas Aircraft Co.* v. *Johnson* (1939) 13 Cal.2d 545 [90 P.2d 572].)[4] The two taxes, sales and use, are mutually exclusive but complementary, and are designed to exact an equal tax based on a percentage of the purchase price of the property in question. In essence " '[a] sales tax is a tax on the freedom of purchase . . . . [a] use tax is a tax on the enjoyment of that which was purchased.' " (*Union Oil Co.* v. *State Bd. of Equalization* (1963) 60 Cal.2d 441, 452 [34 Cal.Rptr. 872, 386 P.2d 496], quot-

---

[2]The Board contends that Berrie may not challenge the validity of Regulation 1670(c) because Berrie failed to articulate that challenge in filing its refund claim. The Board relies on Revenue and Taxation Code section 13103 and *American Alliance Ins. Co.* v. *State Bd. of Equalization* (1982) 134 Cal.App.3d 601, 609 [184 Cal.Rptr. 674, 30 A.L.R.4th 865], for the proposition that the dissatisfied taxpayer must state the basis of a refund claim at the time of filing the claim or be barred from bringing suit for refund on that basis.

While exhaustion of administrative remedies is required prior to seeking relief in the courts (Rev. & Tax. Code, §§ 6904, 6932), there is no indication that Berrie failed to comply with this rule of procedure. In its claim for refund, Berrie, at least indirectly, launched a substantive attack on Regulation 1670(c) by asserting that it had recouped "substantially more than fifty (50%) percent of the purchase price of the rack" through sales of its merchandise/display rack "package." Implicit in this statement is the contention that the designated means by which 50 percent recoupment of the purchase price may be proven under Regulation 1670(c) are too restrictive to be valid.

Moreover, any question as to whether the refund claim actually raised the issue of Regulation 1670(c)'s validity was dispelled by the Board's subsequent trial stance. Not only did the Board fail to raise the alleged jurisdictional defect during the trial, but it met Berrie's validity argument head on and proposed an explicit finding, ultimately incorporated in the statement of decision, that the regulation was "not arbitrary, capricious or patently unreasonable."

Although Berrie's refund claim might have been drafted with greater clarity, it appears that the Board was well aware that Berrie was challenging the validity of Regulation 1670(c). On this record, we cannot say that Berrie failed to exhaust its administrative remedies prior to filing suit challenging the regulation.

[3]Unless otherwise indicated, all statutory references are to the Revenue and Taxation Code.

[4]The Legislature has delegated to the Board the task of enforcing the Sales and Use Tax Law, including the power to audit filed returns and delinquent taxpayers, and has expressly authorized the Board to prescribe and adopt rules and regulations designed to carry out that duty. (§§ 7051, 7052, 7054.) Regulation 1670(c) is such a regulation.

ing *McLeod* v. *J. E. Dilworth Co.* (1944) 322 U.S. 327, 330 [88 L.Ed. 1304, 1306-1307, 64 S.Ct. 1023].)

█ The use tax supplements the sales tax by imposing on those subject to it the same tax burden as would otherwise be assessed under the sales tax. (*Rivera* v. *Fresno* (1971) 6 Cal.3d 132 [98 Cal.Rptr. 281, 490 P.2d 793].) For example, the use tax generally applies where a particular transaction is exempt from sales tax, such as one involving goods purchased in another state and stored or used in California. (See *Rivera, supra; Bank of America Nat. Trust & Sav. Asso.* v. *State Bd. of Equalization* (1962) 209 Cal.App.2d 780 [26 Cal.Rptr. 348].) Ordinarily the use tax does not apply where a resale certificate is given for purchased goods. However, unless a use tax is assessed if the goods are not subsequently resold but disposed of in another manner, the purchaser may well manage to avoid taxation altogether. Thus, the use tax insures that the basic excise tax will be levied on transactions which might otherwise inequitably escape taxation.

█ Whether a particular transaction within the state is subject to sales tax (§ 6051) or to use tax (§ 6201) depends primarily on whether the transfer at issue is a sale.[5] The answer, as the case at bench aptly demonstrates, is not always obvious.

The Sales and Use Tax Law broadly defines a "sale" as "[a]ny transfer of title or possession, exchange, or barter . . . of tangible personal property *for a consideration.*" (Italics added.) (§ 6006, subd. (a).) Absent evidence of receipt of a consideration, the transfer of such property from one party to another, in this case from wholesaler to retailer, does not constitute a sale.

Whether or not a sale has transpired is of central importance in determining tax liability on property for which a resale certificate was originally provided. █ Where a wholesaler gives a manufacturer a resale certificate for goods purchased, the manufacturer is relieved of liability for sales tax as well as the duty of collecting a use tax.[6] (§ 6092; Cal. Admin. Code, tit. 18, § 1668, subd. (a)(1).) If the wholesaler subsequently makes use of

---

[5]The distinction is particularly relevant in the instant case because of quite disparate tax consequences. If transfer of the cardboard racks to Berrie's customers is subject to sales tax, such tax applies only to sales within California (§ 6051), a small fraction of Berrie's total sales. If, on the other hand, use tax applies, Berrie is liable for the tax on each rack because the tax is due on the "storage, use, or other consumption in this state" (§ 6201), and Berrie took delivery of the racks and warehoused them in California.

[6]Only retail sales are subject to sales tax. (§ 6051.) "A 'retail sale' or 'sale at retail' means a sale for any purpose other than resale in the regular course of business in the form of tangible personal property. . . ." (§ 6007.)

the goods without reselling them, then a use tax is due. (§§ 6094, subd. (a),[7] 6244, subd. (a);[8] Cal. Admin. Code, tit. 18, § 1668, subd. (a)(2).[9])[10] Transfer of the goods other than by sale in the regular course is, almost by definition, use.[11] Therefore the Board must have some means available to distinguish a sale from a use in a given transaction.

Regulation 1670(c) provides such a benchmark for transactions involving delivery of marketing aids to retailers. These sales props, such as display racks, neon signs, posters and the like, are either sold to the retailer

---

[7]Section 6094, subdivision (a) provides: "If a purchaser who gives a resale certificate makes any use of the property other than retention, demonstration, or display while holding it for sale in the regular course of business, the use shall be taxable to the purchaser under Chapter 3 (commencing with Section 6201) of this part as of the time the property is first used by him, and, except as provided in subdivisions (b), (c) and (d) of this section, the sales price of the property to him shall be the measure of the tax."

[8]Section 6244, subdivision (a) provides: "If a purchaser who gives a resale certificate or purchases property for the purpose of reselling it makes any storage or use of the property other than retention, demonstration, or display while holding it for sale in the regular course of business, the storage or use is taxable as of the time the property is first so stored or used."

[9]California Administrative Code, title 18, section 1668 provides in relevant part: "(a)(1) The burden of proving that a sale of tangible personal property is not at retail is upon the seller unless the seller timely takes a certificate from the purchaser that the property is purchased for resale. If timely taken in good faith from a person who is engaged in the business of selling tangible personal property and who holds a California seller's permit, the certificate relieves the seller from liability for the sales tax and the duty of collecting the use tax. A certificate will be considered timely if it is taken at any time before the seller bills the purchaser for the property, or any time within the seller's normal billing and payment cycle, or any time at or prior to delivery of the property to the purchaser.

"(2) If a purchaser who gives a resale certificate for property makes any storage or use of the property other than retention, demonstration, or display while holding it for sale in the regular course of business, the storage or use is taxable as of the time the property is first so stored or used. The use tax must be reported and paid by the purchaser with the purchaser's tax return for the period in which the property is first so stored or used. The purchaser cannot retroactively rescind or revoke the resale certificate and thereby cause the transaction to be subject to sales tax rather than use tax."

[10]Relying on *Ontario Community Foundations, Inc.* v. *State Bd. of Equalization* (1984) 35 Cal.3d 811, 816-817 [201 Cal.Rptr. 165, 678 P.2d 378], Berrie contends that Regulation 1670(c) is invalid because it is inconsistent with sections 6094, subdivision (a) and 6244, subdivision (a). This argument puts the proverbial cart before the horse. Sections 6094, subdivision (a) and 6244, subdivision (a) only apply once it has been established that the items for which resale certificates were given, were not sold in the regular course of business or were used in some impermissible manner prior to sale. Thus, the threshold inquiry is whether a "sale," as that term is defined by section 6006, has transpired. Regulation 1670(c) simply interprets section 6006 as it applies to transfers of marketing devices. It does not expand the scope of the statute.

[11]As defined by section 6009, "'Use' includes the exercise of any right or power over tangible personal property incident to the ownership of that property, and also includes the possession of, or the exercise of any right or power over, tangible personal property by a lessee under a lease, except that it does not include the sale of that property in the regular course of business."

or simply placed on the retailer's premises by the wholesaler as point-of-purchase advertising. Although the goal is the same in either case—increased retail sales—the tax treatment is not. Resale certificates add yet another variable to the equation. Because different tax consequences flow from the manner in which these transfers are structured, the Board could reasonably determine that a rule was necessary to assist auditors in distinguishing sales from other transfers. (See *Honeywell, Inc.* v. *State Bd. of Equalization* (1975) 48 Cal.App.3d 907, 914-915 [122 Cal.Rptr. 243] and *Oliver & Williams Elevator Corp.* v. *State Bd. of Equalization* (1975) 48 Cal.App.3d 890, 895 [122 Cal.Rptr. 249] [court may not substitute own policy judgment for that of the Board in adopting reasonable "line drawing" regulations].)

Under Regulation 1670(c) "[a] marketing aid is deemed to be 'sold' if a consideration at least equivalent to 50% of the purchase price of the aid is obtained from the customer . . . ." Berrie concedes that the 50 percent rule is a legitimate means of separating out true sales from sham sales designed to avoid tax liability.[12] Berrie's sole quarrel with the regulation is that it limits the methods by which a taxpayer may prove 50 percent recoupment to two: charging the customer separately for the marketing aid, or increasing the regular price of merchandise delivered to the customer with the marketing aid.[13]

---

[12]Despite Berrie's agreement with the 50 percent rule, Berrie alternatively contends that it is inapplicable to the instant case because transfer of a marketing aid as part of a "packaged deal" is indistinguishable from delivery of a "premium," and should therefore be taxed as a sale. Title 18, California Administrative Code, section 1670, subdivision (d) provides: "[w]hen a person delivers tangible personal property as a premium together with other merchandise sold, and the obtaining of the premium by the purchaser is certain and not dependent upon chance or skill, the transaction is a sale of both articles."

Although the regulation does not otherwise define "premium," the term itself connotes a reward or some other inducement offered to encourage a particular transaction. Thus, the Board could reasonably determine that the premium is a bargained-for part of the sales transaction. This is not necessarily true with marketing aids. The wholesaler's primary purpose in providing such devices may well be to obtain point-of-purchase advertising, rather than to induce a specific sale. This would be particularly true where the retailer carries several competing brands, such as soft drinks, tires or aspirin. The free advertising aspect of marketing aids distinguishes them from merchandise premiums and provides ample justification for the Board's decision to treat them differently.

Berrie, in fact, concurs with this analysis insofar as a separate standard is desirable to aid in identifying sham sales of marketing aids. Accordingly, Berrie has no qualms about the Board's use of Regulation 1670(c) in assessing the sales tax owed on the nondisposable wire racks. To apply Regulation 1670(d) to the disposable cardboard racks would essentially nullify Regulation 1670(c) and destroy the protection it provides against abuse of the sales and use tax system, protection which even Berrie agrees is necessary.

[13]Preliminarily, Berrie asserts that the Board misinterprets the regulation by viewing these two methods as the exclusive means of proof, because they are not repeated later in the text where those who do not recoup 50 percent of the original purchase price are identified as

The requirement of a "separate charge" or an "increased price" as evidence of the sale of a marketing aid is entirely reasonable. Its purpose is to provide objective evidence of a sale pursuant to section 6006 (i.e., evidence of a consideration given) and to assist the Board and its auditors in identifying the billing rate for the particular item so that they may determine whether the supplier has satisfied the 50 percent rule. (See *Sternoff* v. *State Bd. of Equalization* (1980) 103 Cal.App.3d 828, 837 [164 Cal.Rptr. 715] [separate billing requirement meaningful in ascertaining whether packing service sold or used the raw materials it fashioned into custom-built crates].) Compliance with these broadly focused evidentiary alternatives would not be unduly burdensome. The Board's unwillingness to assume, absent a separate charge or increase in the price of the marketed products, that the marketing aid was bargained for by the customer, is far from being arbitrary, capricious or without rational basis. (Cf. *H.J. Heinz Co.* v. *Bowers* (1960) 170 Ohio St. 440 [11 Ohio Ops.2d 176, 165 N.E.2d 792, 795].)

Berrie's testimony at trial that the firm actually recouped 100 percent of the purchase price of the cardboard racks, and made a small profit as well, does not invalidate the Board's classifications.

■  For tax purposes, gross receipts on retail sales of tangible personal property are determined by the amounts received in consideration for sale of the property, not by profit realized or the gross income of the retailer. (See *Szabo Food Service, Inc.* v. *State Bd. of Equalization* (1975) 46 Cal.App.3d 268, 272-273 [119 Cal.Rptr. 911]; §§ 6011, 6012.) The agreed price, as opposed to market value or some subsequently revealed price, dictates the appropriate sales and use tax treatment. (*Hawley* v. *Johnson* (1943) 58 Cal.App.2d 232, 237 [136 P.2d 638].) ■  Because the agreed price for the cardboard display racks was zero, it is inconsequential, for tax purposes, that Berrie factors its overhead, including the cost of the display racks, into the price of its merchandise. Tax law necessarily is based upon what has been done, not what might have been done. The form of the transaction governs. (*Simplicity Pattern Co.* v. *State Bd. of Equalization* (1980) 27 Cal.3d 900, 915 [166 Cal.Rptr. 366, 615 P.2d 555].)

In its sales literature, Berrie offers the cardboard display rack free with a minimum purchase. The only price communicated is the price of the mer-

---

"consumers." Despite the fact that the evidentiary alternatives are not repeated, the plain language of the regulation compels us to reject Berrie's argument. The regulation first defines the sole means by which a supplier may demonstrate that it has recouped 50 percent of the cost of the property, and then classifies those who fail to make such a showing as "consumers." Thus, the Board is not interpreting the regulation but is simply applying it to this particular situation.

chandise to be displayed on the rack. The price per unit remains constant, regardless of volume purchased. Thus, it is virtually impossible for the retailer or the Board to determine what consideration, if any, is being exchanged for the display rack. Berrie's word alone, that it recoups the entire cost of the cardboard display racks through the combination sale, does not suffice. (See *People* v. *Schwartz* (1947) 31 Cal.2d 59, 64 [187 P.2d 12] [Board need not accept taxpayer's word unsupported by available records].)

By contrast, Berrie's sales literature promoting other merchandise advises retailers that, for a stated price, they can buy a wire display rack which arrives complete with some "free" merchandise. The unit price of the merchandise appears on the same flyer. Using simple arithmetic, the retailer and the Board can easily calculate the selling price or agreed price, of the rack. As it did in the instant case, the Board may then apply Regulation 1670(c)'s 50 percent rule and assess the tax accordingly. For sales and use tax purposes, the objective criteria of identified price distinguishes this transaction from transfer of the "free" cardboard display racks. We cannot say that requiring some evidence of consideration passing to the wholesaler for the sales aid is arbitrary, capricious or without rational basis.

Berrie transferred the cardboard display racks to its retail customers without billing for the racks or raising the price of accompanying merchandise. As a result, Berrie did not satisfy Regulation 1670(c)'s requirement of proving that a sale (§ 6006) occurred. Regulation 1670(c) provides that those who supply marketing aids without obtaining reimbursement of 50 percent of the purchase price "are deemed to be the consumers of the property provided." Berrie is thus liable for use tax on the cardboard display racks. (§§ 6009, 6094, subd. (a), 6244, subd. (a).)

Accordingly, the judgment in favor of the Board is affirmed.

Bird, C. J., Mosk, J., Broussard, J., Grodin, J., Kaus, J.,* and Best, J.,† concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

†Assigned by the Chairperson of the Judicial Council.