Filed 9/24/18; Certified for Publication 10/24/18 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| MCI COMMUNICATIONS SERVICES, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION, <br><br> Defendant and Respondent. | D072402 <br><br><br> (Super. Ct. No. 37-2015-00039212-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge. Affirmed.

Eversheds Sutherland, Carley A. Roberts, Eric J. Coffill, Douglas Mo, Eric S. Tresh, and Suzanne M. Palms for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Diane S. Shaw, Assistant Attorney General, Lisa Chao, Ronald N. Ito, Jane O'Donnell, and Debbie Jean Vorous, Deputy Attorneys General, for Defendant and Respondent.

In this action for a state tax refund against the California Department of Tax and Fee Administration (CDTFA), Plaintiff MCI Communications Services, Inc. (MCI) appeals from a judgment of dismissal entered after the trial court sustained CDTFA's demurrer to MCI's first amended complaint without leave to amend.

The California Sales and Use Tax Law (Rev. & Tax. Code, § 6001 et seq.)[1] (SUTL) imposes sales and use taxes on retailers and purchasers for the sale, use, storage, or consumption of tangible personal property within California. Certain categories of property are excluded from the definition of tangible personal property and therefore are not subject to sales and use taxation. Under section 6016.5, one such category of excluded property includes "telephone and telegraph lines, electrical transmission and distribution lines, and the poles, towers, or conduit by which they are supported or in which they are contained." This appeal requires us to decide whether the tax exclusion in section 6016.5 extends to the pre-installation component parts that may one day be incorporated into completed telephone and telegraph systems.

We hold that section 6016.5 excludes only fully installed and completed telephone and telegraph lines from sales and use taxation, not the pre-installation component parts of such lines. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

MCI is a provider of telecommunications services and products. Between January 1, 2006 and December 31, 2011, MCI purchased telephone cables, conduit (a

---

[1]    All further statutory references are to the Revenue and Taxation Code, unless otherwise noted.

round sheath generally made of PVC plastic), and telephone poles from third party vendors and intercompany affiliates. The three categories of items at issue—telephone cables, conduit, and telephone poles—did not require further assembly or construction. Instead, each category of items was assembled and ready for installation at the time of purchase.[2] After MCI purchased these items, MCI and its subcontractors used MCI's purchased conduit and telephone poles to install the purchased telephone cables for use in MCI's telecommunications network.

MCI paid use tax on the telephone cables, conduit, and telephone poles that it purchased, and then filed a claim for refund under section 6934.[3] As the basis for its refund claim, MCI argued that the items at issue did not constitute "tangible personal property" under section 6016 because, according to MCI, those items fell within the sales and use tax exception set forth in section 6016.5.

CDTFA demurred to MCI's first amended complaint and the trial court sustained the demurrer without leave to amend. In relevant part, the trial court ruled that section 6016.5 did not apply to MCI's cables, conduit, and telephone poles because those

---

[2]    MCI describes such purchased product as being "completed." For example, MCI states that it "purchased telephone poles used to support aerially-installed telephone cables above the ground," and further states that it "did not assemble the telephone poles but instead purchased only completed poles." MCI similarly states that it purchased "completed cable" and "completed conduit."

[3]    MCI initially named the California State Board of Equalization as defendant. However, CDTFA became the successor to the California State Board of Equalization, effective July 1, 2017. (Gov. Code, § 15570.22.) All further references to the California State Board of Equalization shall be to CDTFA.

items were "separate, component parts" of MCI's anticipated telephone line and section 6016.5 "does not apply to pre-installed component parts of a 'telephone line.' "

MCI appealed.

## DISCUSSION

I. *Standard of Review*

We review an order sustaining a demurrer under a de novo standard of review. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.)  " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed.' [Citation.]  Further, we give the [complaint] a reasonable interpretation, reading it as a whole and its parts in their context." (*Finch Aerospace Corp. v. City of San Diego* (2017) 8 Cal.App.5th 1248, 1251-1252.)  Where, as here, a " ' "demurrer is sustained, we determine whether the [complaint] states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment:  if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff." ' "  (*Id*. at p. 1252.)

II. *Sales and Use Tax Principles*

The SUTL "embodies a comprehensive tax system created to impose an excise tax, for the support of state and local government, on the sale, use, storage or consumption of tangible personal property within the state." (*Wallace Berrie & Co. v.*

4

*State Bd. of Equalization* (1985) 40 Cal.3d 60, 66.)  A " ' "sales tax is a tax on the freedom of purchase," ' " while a " ' "use tax is a tax on the enjoyment of that which was purchased." ' "  (*Ibid*.)

"The two taxes, sales and use, are mutually exclusive but complementary, and are designed to exact an equal tax based on a percentage of the purchase price of the property in question."  (*Wallace*, *supra*, 40 Cal.3d at p. 66.)  Because they are mutually exclusive, either sales tax or use tax may apply to a single transaction, but not both.  Unlike sales tax, which is imposed on the retailer, the person storing, using, or otherwise consuming the tangible personal property at issue is liable for the payment of use tax.  (§ 6202.)[4]  A use tax is imposed on purchasers who buy tangible personal property outside of California (for use in California)—where the state otherwise would not receive sales tax revenue.  (See *Searles Valley Minerals Operations, Inc. v. State Bd. of Equalization* (2008) 160 Cal.App.4th 514, 520 (*Searles*).)  "The use tax is thus intended to complement the sales tax so that, between them, 'all transactions [that] result in tangible personal property joining the aggregate of capital assets within this state' will be taxed for the support of the state government."  (*Ibid*.)

Section 6016 defines tangible personal property—the storage, use, or consumption of which may give rise to use tax liability—as "personal property which may be seen, weighed, measured, felt, or touched, or which is in any other manner perceptible to the senses."  There are several exemptions from the tax, such as exemptions for most sales of

---

4    The retailer, however, may collect use tax as an agent.  (§ 6203; *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1104, fn. 5.)

foods for human consumption (§ 6359), sales of specified prescription medicines (§ 6369), and certain sales to the federal government (§ 6381).  At issue here is section 6016.5, which excludes "telephone and telegraph lines, electrical transmission and distribution lines, and the poles, towers, or conduit by which they are supported or in which they are contained" from the definition of tangible personal property.

III.  *Statutory Interpretation Principles*

"[W]e start with the language of the statute, 'giv[ing] the words their usual and ordinary meaning [citation], while construing them in light of the statute as a whole and the statute's purpose [citation].' "  (*Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135.)  " 'The statute's words generally provide the most reliable indicator of legislative intent; if they are clear and unambiguous, "[t]here is no need for judicial construction and a court may not indulge in it."  [Citation.]  Accordingly, "[i]f there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." ' "  (*Cequel III Communications I, LLC v. Local Agency Formation Com. of Nev. County* (2007) 149 Cal.App.4th 310, 318.)

"Nonetheless, 'the "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute.  The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible.  [Citation.]' (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)  If a statute is susceptible to more than one reasonable interpretation, the court

6

may consider the statute's purpose, the evils to be remedied, the legislative history, public policy, and contemporaneous administrative construction. (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340.) In addition, the court may consider the consequences that will flow from a particular interpretation. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387.)" (*Cal. Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2012) 203 Cal.App.4th 1328, 1338.)

The interpretation of a statute presents a question of law. (*Searles*, *supra*, 160 Cal.App.4th at p. 520.) Accordingly, we interpret section 6016.5 de novo. (*Ibid*.)

IV. *Analysis*

A. *Statutory Text*

Consistent with the rules of statutory construction, our analysis begins with an examination of the text of section 6016.5 and, more specifically, an inquiry into the meaning of the term "lines" in the statutory provision excluding "telephone and telegraph lines" from taxation. MCI contends that "lines" are synonymous with "cables" and, as a result, argues that a "line" (i.e., cable) exists regardless of whether that line has been installed into an integrated system. CDTFA, on the other hand, argues that a "line" denotes a complete telephone or telegraph system, such that section 6016.5 does not apply to the pre-installation component parts of any such system.

In determining whether either of these definitions is correct, we may look to dictionary definitions " 'to determine the usual and ordinary meaning of [the] words in [the] statute.' " (*Siskiyou County Farm Bureau v. Dept. of Fish and Wildlife* (2015) 237 Cal.App.4th 411, 433 (*Siskiyou County*); see also *Wasatch Property Management v.*

7

*Degrate* (2005) 35 Cal.4th 1111, 1121-1122 ["When attempting to ascertain the ordinary, usual meaning of a word, courts appropriately refer to the dictionary definition of that word."].) "[R]elevant dictionary definitions are those extant before or at least near in time to the statutory or contractual usage." (*Siskiyou County*, at pp. 433-434.)

A dictionary in publication at the time of section 6016.5's enactment[5] defines a "line" as a "wire or pair of wires *connecting one telegraph or telephone station with another, or the whole of a system of such wires*." (Webster's 2d New Internat. Dict. (1953) p. 1435, col. 3, italics added.) As this definition makes clear, a comprehensive and completed system of cables must be in place for a "line" to exist. Indeed, a wire or pair of wires cannot *connect* multiple telephone or telegraph stations unless the system at issue is already installed. Nor can "a system of such wires" exist prior to installation. We conclude this contemporaneous dictionary definition of "line" supports CDTFA's reading of section 6016.5, and our conclusion that pre-installation component parts are subject to taxation.

MCI proffers an alternative dictionary definition of "line," which states that a "line" is a "cable or wire for telegraph or telephone." (Oxford English Dict. (5th ed. 1964) p. 702, col. 2.) MCI's definition, however, is silent on the critical question in this appeal—whether *uninstalled* cable or wire constitutes a "line," or whether the cable or wire must be *installed*. MCI's proposed definition of "line" therefore is not helpful, and

---

5    The Legislature enacted Assembly Bill No. 1086 (AB 1086), which was codified as section 6016.5, in 1965. (Stats. 1965, ch. 1960, § 2, p. 4488.)

8

does not undercut our conclusion that a completed telephone or telegraph system must be installed for a "line" to exist within the meaning of the SUTL.

Our construction of "line" as constituting a completed, installed system is consistent with the court's ruling in *Chula Vista Electric Company v. State Board of Equalization* (1975) 53 Cal.App.3d 445 (*Chula Vista*). In *Chula Vista*, an electrical contractor entered into a contract with the United States for the installation of electrical cable, and was assessed a use tax for the cable used in the construction project. (*Id.* at p. 448.) The taxpayer—like MCI here—brought a tax refund claim against CDTFA, arguing that the cable was not tangible personal property under section 6016.5. (*Chula Vista*, at pp. 448-449.) The court held that the term "line" as used in section 6016.5 referred "to the line as a whole and not to its component parts such as the cable." (*Chula Vista*, at p. 451.) The court rejected the taxpayer's claim that it was entitled to a tax refund for pre-installation cables that it purchased and later installed. (*Id.* at p. 453.) The *Chula Vista* court reached the same result that we do here, concluding that section 6016.5 "excludes from the definition of tangible personal property only completed electrical, telephone, and telegraph lines, and does not exclude components used in the construction or repair of the lines." (*Chula Vista*, at p. 453.)[6]

The court's opinion in *King v. State Board of Equalization* (1972) 22 Cal.App.3d 1006 (*King*) also supports our interpretation of the term "line" under the Revenue and

_____

[6]    MCI sought judicial notice of the appellate briefing in *Chula Vista*. We will treat MCI's request to take judicial notice as a motion to augment the record on appeal and, as such, grant MCI's motion. (Cal. Rules of Court, rule 8.155(a)(1)(A); see also Cal. Rules of Court, rule 8.122(a)(3).)

Taxation Code.  In *King*, a contractor supplied electrical conductor (cable or wire), insulators, and hardware, and fastened the conductor to steel towers pursuant to a contract for the construction of electrical transmission lines.  (*King*, at p. 1009.)  The contractor did not dispute that he owed taxes for the tangible materials used for the construction (like MCI does), but objected to the imposition of sales tax on the amount of the contract attributable to installation labor.  (*Id*. at p. 1010.)  The *King* court held that the contractor did not owe sales tax for any installation labor related to the transmission line, reasoning that the parties to the transaction never engaged in a sale of a completed electrical transmission line.  (*Id*. at p. 1012.)  As the *King* court explained, "the contractor at no time had title or possession of a completed power line," as would have been necessary to affect a sale.  (*Id*. at p. 1013.)  Instead, the contractor "had title and possession only of the several components—wire, insulators and hardware."  (*Ibid*.)  We agree with the analysis in *King*, and likewise view "lines" and their component parts as conceptually distinct from one another.

      B.  *Canons of Statutory Interpretation*

Familiar canons of statutory construction lend support to our textual analysis of section 6016.5.  Most notably, the *noscitur a sociis* canon of construction (*People v. Prunty* (2015) 62 Cal.4th 59, 73 (literally, a word "is known by its associates")), instructs that the meaning of a word contained within a statute "takes color from the other words listed in the same provision . . . ."  (*Kleffman v. Vonage Holdings Corp*. (2010) 49 Cal.4th 334, 343.)  Therefore, " 'when a statute contains a list or catalogue of items, a court should determine the meaning of each by reference to the others, giving preference to an

10

interpretation that uniformly treats items similar in nature and scope.' " (*Ibid*.; see *People v. Hubbard* (2016) 63 Cal.4th 378, 388-389 [analyzing statute's "surrounding provisions" to discern legislative intent].)

As noted *ante*, section 6016.5 excludes "telephone and telegraph lines, electrical transmission and distribution lines, and the poles, towers, or conduit by which they are supported or in which they are contained" from taxation. Applying the *noscitur a sociis* canon of construction to this provision, we interpret section 6016.5's reference to "telephone and telegraph lines" in light of the clause that follows it—"the poles, towers, or conduit by which [the telephone and telegraph lines] are supported or in which they are contained."

As the trial court correctly recognized, the Legislature's use of present tense verbs in this clause ("are supported" and "are contained") confirms that a telephone or telegraph line must already be "supported" or "contained"—i.e., completed and installed—to fall within the scope of section 6016.5. (See *Hughes v. Bd. of Architectural Examiners* (1998) 17 Cal.4th 763, 776 ["In construing statutes, the use of verb tense by the Legislature is considered significant."].) This construction is consistent with the *Chula Vista* court's ruling that "electrical transmission and distribution lines"—which are also modified by the clause referring to "poles, towers, or conduit"—"refers to the line as a whole and not to its component parts such as the cable." (*Chula Vista*, *supra*, 53 Cal.App.3d at p. 451.)

Had the Legislature intended section 6016.5 to apply to poles, towers, or conduit that would, in the *future*, support telephone or telegraph lines, it could have stated as

11

much.  But it did not.  Our role in interpreting the statute is "not to insert what has been omitted, or to omit what has been inserted."  (Code Civ. Proc., § 1858; see *Stirling v. Brown* (2018) 18 Cal.App.5th 1144, 1156 [" ' "It is . . . against all settled rules of statutory construction that courts should write into a statute by implication express requirements which the Legislature itself has not seen fit to place in the statute." ' "].)

We are further persuaded that section 6016.5 excludes only completed telephone and telegraph lines because section 6016.5 does not expressly exclude the "component" parts of such lines.  That omission is noteworthy, given that the SUTL expressly exempts "component" parts of certain other categories of property from sales and use taxation.  Section 6359, for instance, exempts "hot and cold food items *or components*" thereof from sales and use taxation.  (§ 6359, subd. (e), italics added.)  Section 6362.7 exempts "property which becomes an ingredient *or component part* of any newspaper or periodical" from taxation.  (§ 6362.7, subd. (a), italics added.)  And section 6366, subdivision (a)(3) exempts "a *component* part of any aircraft."  (§ 6366, subd. (a)(3), italics added.)  Where, as here "different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning."  (*Briggs v. Eden Council for Hope and Opportunity* (1999) 19 Cal.4th 1106, 1117 (*Briggs*).)  In accordance with these principles, we presume that the Legislature knew how to exempt the "component parts" of telephone and telegraph lines (and electrical transmission and distribution lines) from taxation, and that it chose not to do so.

12

C. *MCI's Arguments*

MCI makes several interpretative arguments to support its reading of section 6016.5. We find none of MCI's arguments persuasive.

First, MCI argues that section 6016.5—although it uses present tense verbs ("are supported" and "are contained")—should be construed as though it employs the future tense, and therefore encompasses "telephone and telegraph lines . . . and the poles, towers, or conduit by which they are [*or will be*] supported or in which they are [*or will be*] contained." (§ 6016.5.) In support of this argument, MCI relies on section 11, a default provision of the Revenue and Taxation Code stating that "[t]he present tense includes the past and future tenses; and the future, the present." Section 5, however, clarifies that the Revenue and Taxation Code's default provisions, including section 11, do not apply if "the context otherwise requires . . . ." (§ 5.) Here, the context of section 6016.5—most notably, the absence of any statutory exclusion for "component" parts prior to completion of the lines—evinces precisely the type of legislative intent sufficient to override the general provisions of section 11.

Accordingly, this case is distinguishable from *State Board of Equalization v. Wirick* (2001) 93 Cal.App.4th 411 (*Wirick*), on which MCI relies. In *Wirick*, CDTFA levied a tax on a former officer of a corporation under section 6829, which imposes liability on officers if a corporation terminates and has unpaid sales taxes. The plaintiff argued that section 6829 did not apply to *former* officers because it imposes liability only if an officer "*is* charged with" corporate responsibilities or "*is* under a duty" to act for the corporation. (*Wirick*, at p. 416, italics added.)

13

*Wirick* rejected that argument, applied section 11, and held that section 6829 imposes liability on any officer who "is [or was] charged with" corporate responsibilities, or who "is [or was] under a duty" to act for the corporation. (*Wirick*, *supra*, 93 Cal.App.4th at p. 417.) Notably, however, that holding was necessary to harmonize section 6829 with another statutory provision limiting each individual officer's liability to the period during which he or she had a duty to act for the corporation. (*Wirick*, at p. 417.) If section 11 did not apply to section 6829, the CDTFA's ability to recover unpaid taxes would have been severely impaired, in direct conflict with the clear legislative intent to support the "aggressive collection of sales tax." (*Wirick*, at p. 417.) Here, by contrast, applying section 11 would *not* harmonize section 6016.5 with any other statutory provision, and would instead alter the statutory language and undermine the statutory purpose of capturing all transactions resulting in the sale and use of tangible personal property. (*Union Oil Co. v. State Bd. of Equalization* (1963) 60 Cal.2d 441, 449.)

Second, MCI contends we should reject CDTFA's interpretation of section 6016.5 because other provisions of the Revenue and Taxation Code already ensure that the sale of fully installed telephone and telegraph lines are exempt from sales and use taxation. Namely, MCI contends that provisions relating to (1) occasional sales, and (2) real property improvements, would be rendered superfluous under CDTFA's proposed interpretation. (*People v. Salas* (2017) 9 Cal.App.5th 736, 743 [" '[I]nterpretations which render any part of a statute superfluous are to be avoided.' "].)

14

Pursuant to section 6367, "a sale of otherwise taxable property is not subject to sales [or use] tax if it constitutes an 'occasional sale.' " (*Touche Ross & Co. v. State Bd. of Equalization* (1988) 203 Cal.App.3d 1057, 1065.)[7] We cannot accept MCI's implicit argument that the sale of completed telephone and telegraph lines invariably occurs two or fewer times per year, such that section 6367's occasional sales exemption will always exempt such transactions from taxation. As we have held, "[i]n reviewing a trial court's ruling sustaining a demurrer, we are limited to the facts alleged on the face of the pleading and those properly subject to judicial notice." (*Rosen v. St. Joseph Hospital of Orange County* (2011) 193 Cal.App.4th 453, 456, fn. 1; see *Briggs v. Lawrence* (1991) 230 Cal.App.3d 605, 610 ["The extensive recitations in the parties' briefs of facts and circumstances neither alleged in the complaint nor subject to judicial notice, and their extensive arguments based on those facts and circumstances, are not relevant to our

---

7     The SUTL defines "occasional sale" in pertinent part by reference to whether the seller is required to have a seller's permit. (See § 6006.5, subd. (a) [defining "occasional sale" to include "[a] sale of property not held or used by a seller in the course of activities for which he or she is required to hold a seller's permit or permits or would be required to hold a seller's permit or permits if the activities were conducted in this state, provided that the sale is not one of a series of sales sufficient in number, scope, and character to constitute an activity for which he or she is required to hold a seller's permit or would be required to hold a seller's permit if the activity were conducted in this state."].) Sales and Use Tax regulation 1595 further provides: "Generally the minimum number of sales to require the holding of a seller's permit by a person not otherwise engaged in a selling activity is three within any 12 month period." (Cal. Code Regs., tit. 18, § 1595, subd. (a)(4)(A).)

inquiry."].)  The facts *pleaded* in the complaint do not support MCI's argument that transactions involving installed telephone and telegraph lines "rarely," if ever, occur.[8]

Nor is it relevant, as MCI suggests, that MCI is in the business of selling telecommunications services and products, rather than telephone and telegraph lines. Indeed, "[i]t is not required that the principal business activity of the taxpayer shall involve making retail sales of tangible personal property, if, in fact, the retail sales of tangible personal property made by the taxpayer are sufficient in number, scope and character to make the taxpayer a retailer under the provisions of the Revenue and Taxation Code."  (*Hotel Del Coronado Corp. v. State Bd. of Equalization* (1971) 15 Cal.App.3d 612, 619-620.)  Even if MCI could rely on the "occasional sales" exemption, MCI fails to explain how this renders our interpretation of section 6016.5 superfluous or devoid of meaning when applied to other purchasers or sellers.  (See *Scher v. Burke* (2017) 3 Cal.5th 136, 146 [statutory provisions allowing landowners to avoid dedication by posting signs and recording notices to indicate that use of their land is permissive are not rendered superfluous; the provisions retain relevance for other landowners and in other contexts].)

MCI also argues that CDTFA's reading of section 6016.5 would render that provision mere surplusage because telecommunications systems already fall within the definition of "real estate" or "real property"—i.e., they are not tangible personal

---

8     The complaint alleges that "[i]n years past, one or more of [MCI's] affiliates sold portions of a telecommunications network grid in California."  This allegation is ambiguous at best, and undercuts MCI's occasional sales argument.

16

property—under sections 104 and 105.[9]  (§§ 104, 105, subd. (a).)  However, sections 104 and 105 apply only to division 1 of the Revenue and Taxation Code (Property Taxation), not division 2 of the Revenue and Taxation Code (Other Taxes), in which the SUTL is situated.  Section 101 limits the reach of sections 104 and 105, as follows:  "Unless the context otherwise requires, the general provisions hereinafter set forth govern the construction of this division," i.e., division 1.  (§ 101.)  As a result, "there is no express direction by the Legislature compelling application of the definitions given in the General Provisions of division 1 to the Sales and Use Tax Law contained in division 2." (*Standard Oil Co. of Cal. v. State Bd. of Equalization* (1965) 232 Cal.App.2d 91, 99-100 (*Standard Oil*).)  Accordingly, courts repeatedly have declined to apply sections 104 and 105 to the SUTL.  (See *Richard Boys Industries, Inc. v. State Bd. of Equalization* (2001) 89 Cal.App.4th 706, 714 ["To the extent [appellant] attempts to import real property tax law into the determination of taxes owed on his construction contracts, the case law does not support him."]; *King*, *supra*, 22 Cal.App.3d at p. 1011 ["The coverage of the sales tax law is shaped by its own provisions and definitions."]; *Standard Oil*, at pp. 99-100 [same].)  In accordance with these authorities, we conclude that the characterization of completed telephone and telegraph lines (as well as electronic transmission and distribution lines) for purposes of ad valorem taxation in division 1 does not render

---

9     Previously, section 105 excluded "telephone and telegraph lines" from the definition of improvements to real property.  (Former § 105, subd. (a).)  The Legislature removed this exclusion in 1977.  (Stats. 1977, ch. 539, § 1, p. 1741.)

section 6016.5 mere surplusage for purposes of California sales and use taxation in division 2.

Even if we were to agree with MCI that section 6016.5 would be rendered superfluous, it would not change the outcome of this appeal. Although "a construction that renders part of a statute to be surplusage should be avoided [citation], this rule is not absolute and 'the rule against surplusage will be applied only if it results in a *reasonable* reading of the legislation' [citation]." (*Park Medical Pharmacy v. San Diego Orthopedic Associates Medical Group, Inc*. (2002) 99 Cal.App.4th 247, 254, fn. 5; see *Sturgeon v. County of L.A.* (2015) 242 Cal.App.4th 1437, 1448 ["[T]he canon against surplusage is not absolute."].) Here, applying section 6016.5 as MCI proposes results in an interpretation that is unreasonable, at odds with the plain language of the statute, and contrary to established authority.

Third, relying on *926 North Ardmore Avenue, LLC v. County of Los Angeles* (2017) 3 Cal.5th 319, 328, MCI argues that section 6016.5 constitutes a tax exclusion statute that should be construed to favor the taxpayer. CDTFA, on the other hand, argues that section 6016.5 is a tax exemption statute that, according to *Standard Oil*, *supra*, 39 Cal.App.3d at page 769, must be construed in favor of the taxing authority. We have not found any California decisions distinguishing between tax exclusion and tax exemption statutes, nor have the parties directed us to any such authority. We need not parse through any distinctions between tax exclusion and tax exemption statutes because we may only construe a tax statute in favor of a taxpayer if the language of that statute is unclear. (*Ardmore*, at p. 328 ["[A] statute whose language is unclear should be construed

18

to favor the taxpayer."]; *Microsoft Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 750, 759 ["To the extent the language is ambiguous, we generally will prefer the interpretation favoring the taxpayer."].)  Because we do not find section 6016.5's text to be ambiguous or unclear for the reasons discussed *ante*, it is unnecessary for us to determine whether section 6016.5 should be construed in MCI's or CDTFA's favor.

Finally, MCI spends considerable effort attempting to distinguish this case from *Chula Vista* and arguing that the *Chula Vista* decision is erroneous.  Specifically, MCI contends:  (1) the present case is different because the facts are not yet developed; (2) *Chula Vista* only dealt with "electrical transmission cable" and an "electrical contractor," neither of which is at issue here; and (3) *Chula Vista* is distinguishable because it analyzed section 6016.5 in the context of lines connected to "movable property" and construction contracts, whereas MCI is not a construction contractor and its lines are "connected to permanent property."  We are not persuaded by MCI's claims.  As noted *ante*, a demurrer admits all material facts that are properly pleaded.  The facts alleged in MCI's first amended complaint—describing how MCI purchases the materials at issue for later installation into its telecommunications network—sufficiently demonstrate that *Chula Vista* is controlling.  The question before us is the same as the question before the *Chula Vista* court—i.e., whether the exclusion from the definition of tangible personal property under section 6016.5 includes component parts.  In *Chula Vista*, that question was analyzed by reference to "electrical transmission and distribution lines." (*Chula Vista*, *supra*, 53 Cal.App.3d at p. 451.)  Here, the same question is analyzed by reference to "telephone and telegraph lines."  This difference is immaterial,

insofar as both types of lines are included in the same statute, and provides no basis for departing from *Chula Vista*.[10] Similarly, it is immaterial that the taxpayer in *Chula Vista* was an electrical contractor installing wiring in construction projects, circumstances that do not apply to MCI. These facts do not alter our analysis of the statutory language at issue. Moreover, the *Chula Vista* court correctly recognized that the language of section 6016.5 is not limited to just "electrical" lines. (See *Chula Vista*, *supra*, at p. 452 [referring to statutory language, including "telephone and telegraph lines"]; *id*. at p. 453 ["Section 6016.5 does not exclude from the definition of tangible personal property the component tangible parts of an electrical transmission line any more than it excludes the component tangible parts of any other improvement to real property constructed by a contractor. . . . We thus conclude that section 6016.5 . . . excludes from the definition of tangible personal property only completed electrical, telephone, and telegraph lines, and

---

10    MCI's effort to characterize its purchased materials as "complete"—one of the terms used in *Chula Vista*—does not alter our analysis. (*Chula Vista*, *supra,* 53 Cal.App.3d at p. 453; see fn. 2, *ante*.) It is clear from MCI's first amended complaint that the materials it purchased are "components" of MCI's telecommunications system as that term was used in *Chula Vista*. (See *Chula Vista*, at p. 448 [referring to "cable" as among the "component parts of the transmission and distribution line"]; *id*. at p. 451 [distinguishing between the term " 'electrical transmission line,' " as referring to "the line as a whole[,] and not to its component parts such as the cable"]; *id*. at p. 453 ["Since the cable installed by taxpayer is a component and not a complete electrical transmission line, the board properly treated the cable as tangible personal property."].) The products MCI purchased, including the cable, are necessary components of MCI's telecommunications network. Just as cable was needed for the contractor's electrical transmission line to function, MCI needs each of the categories of products it purchased—cables, conduit, and poles—for its telecommunications system to perform its function.

does not exclude components used in the construction or repair of the lines."].)  In sum, we reject MCI's efforts to distinguish or narrow the scope of the *Chula Vista* decision.

### D.  *Legislative History*

Because we resolve this appeal based on the plain text of section 6016.5, we need not engage in an extended analysis of that provision's legislative history.  Nevertheless, MCI has not directed us to any legislative history supporting its interpretation of section 6016.5.  The legislative record, scant though it is, supports our conclusion that the Legislature intended section 6016.5 to exclude only completed and installed telephone and telegraph lines from taxation.

When examining a statute's legislative history, it is appropriate for courts to consider the timing and historical context of the Legislature's actions.  (*Briggs*, *supra*, 19 Cal.4th at p. 1120 [drawing inferences about a statute's meaning based on "[t]he timing of the amendment alone"]; *In re Martinez* (2012) 210 Cal.App.4th 800, 814 [examining "the timing of the Legislature's addition of the word 'reasonably' to Senate Bill" as part of legislative intent analysis].)  Accordingly, we discuss the context in which section 6016.5 was enacted.  We believe the context of the statute's enactment demonstrates it was designed to remedy disparate tax treatment, and not to exclude component tangible materials from the sales and use tax.  Prior to the enactment of section 6016.5, CDTFA required installers of transmission lines to pay more taxes than other similarly situated taxpayers.  They were taxed based on (1) installation labor costs as well as (2) the cost of tangible materials used on the job, whereas others only paid taxes on the cost of tangible materials.  (*Chula Vista*, *supra*, 53 Cal.App.3d at p. 452;

21

*King*, *supra*, 22 Cal.App.3d at pp. 1010-1011, 1013-1014.) We agree with the *Chula Vista* court that section 6016.5 can properly be viewed as a response to such disparate treatment and to the litigation that was filed challenging such treatment.[11] However, none of the litigation challenged the applicability of sales and use tax to component materials used to construct a transmission line. In other words, section 6016.5 put installers of transmission lines on equal footing with respect to the applicable tax base (by no longer including labor costs)—it did not insulate the component parts or tangible materials themselves from taxation.

CDTFA identifies a handful of statements in the legislative record that further support our interpretation of AB 1086: (1) a July 8, 1965 memorandum written by Hale Champion, the State's Director of Finance, to Governor Edmund G. Brown; (2) the Legislative Analyst's analysis of AB 1086; and (3) a May 24, 1965 Assembly Committee on Revenue and Taxation report. These materials demonstrate the Legislature was aware the Attorney General was interpreting former section 105's exclusion of telephone and telegraph lines from the definition of improvements to real property, and applying that interpretation in a manner that resulted in differential treatment of taxpayers. (See Director of Finance, Hale Champion, memorandum to Governor Edmund G. Brown,

---

[11] CDTFA's practices resulted in a spate of lawsuits in the early and mid-1960's challenging CDTFA's characterization of installation labor. (*King*, *supra*, 22 Cal.App.3d at pp. 1014-1015; *C. R. Fedrick, Inc. v. State Bd. of Equalization* (1974) 38 Cal.App.3d 385, 399-400; *A. S. Schulman Electric Co. v. State Bd. of Equalization* (1975) 49 Cal.App.3d 180, 183-185.) While these lawsuits were pending, the Legislature enacted section 6016.5. (*Chula Vista*, *supra*, 53 Cal.App.3d at p. 452.) As the *Chula Vista* court correctly observed, "the coincidence of the enactment of Revenue and Taxation Code section 6016.5 with the litigation cannot be ignored." (*Ibid*.)

22

July 8, 1965 (Champion Memorandum) ["The Attorney General has ruled that this definition [in former section 105, subd. (a)] also applies to the sales tax, and the ruling is broad enough to include transmission and distribution lines, poles, towers and conduit. This ruling has resulted in confusion and a different treatment between installations made for federal agencies and private utilities."]; accord, Legis. Analyst, analysis of Assem. Bill No. 1086 (1965 Reg. Sess.).)

The legislative history further shows the Legislature was attempting to ensure uniform treatment of taxpayers—by declaring that "telephone and telegraph lines" and "electrical transmission and distribution lines" should be treated as improvements to real property for sales and use taxation purposes. (See Champion Memorandum [AB 1086 "declare[s] prospectively that telephone and telegraph lines, electric transmission and distribution lines, poles, towers, or conduit are not tangible personal property and hence are to be treated as improvements to real property"]; Legis. Analyst, analysis of Assem. Bill No. 1086 (1965 Reg. Sess.) ["The effect [of section 6016.5] would be to eliminate confusion which now exists where contractors installing such facilities for a federal agency, such as the Central Valley Project, and those doing likewise for a private utility are accorded different treatment for sales tax purposes."]; Assem. Com. on Rev. and Tax. Analysis of Revenue Bills for Assem. Bill No. 1086 (Reg. Sess. 1965) May 24, 1965 [AB 1086 would "remove [sales and use] tax from sales of . . . installed equipment to private utilities," a change expected to result in offsetting revenues because "when materials are purchased by the contractor the tax is imposed whether the construction is for a private utility or a federal agency."].)

23

Our own research disclosed an additional piece of the legislative record that supports CDTFA's position. In a June 10, 1965 letter to Governor Brown, Assemblyman Alfred E. Alquist, the sponsor of AB 1086, advised Governor Brown that his bill would "allow the state to tax the cost of materials used in constructing transmission lines," while "[a]t the same time it [would] relieve private and local government consumers of sales tax on the cost of fabricating these structures"—the same type of argument CDTFA asserts here. (Assemblyman Alquist, sponsor of Assem. Bill No. 1086 (1965 Reg. Sess.), letter to Governor, June 10, 1965.) While not controlling, the bill sponsor's statements further support our construction of section 6016.5. (See *Larkin v. Workers' Comp. Appeals Bd.* (2015) 62 Cal.4th 152, 164, fn. 10 ["While there are often limits to what an interpreter may reasonably infer from an individual legislator's letter [citation], we have considered letters expressing the views of a bill's sponsor where those views are fully consonant with the statutory language and the history of the legislation."].)

Collectively, this legislative history buttresses our conclusion that section 6016.5 applies only to completed telephone and telegraph lines, not the component parts thereof.[12] Notably, and consistent with our analysis *ante*, the Legislature did nothing to

---

[12]    CDTFA requested judicial notice of the legislative records discussed herein. In opposition, MCI argued that these records are not indicative of legislative intent because they were obtained from the Governor's enrolled bill file. The Supreme Court, however, has "routinely found enrolled bill reports, prepared by a responsible agency contemporaneous with passage and before signing, instructive on matters of legislative intent." (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 934, fn. 19.) CDTFA's request for judicial notice of the legislative records discussed herein is granted.

alter how component parts are taxed. (*Chula Vista*, *supra*, 53 Cal.App.3d at p. 453 ["Section 6016.5 does not exclude from the definition of tangible personal property the component tangible parts of an electrical transmission line any more than it excludes the component tangible parts of any other improvement to real property constructed by a contractor."].) Instead, the legislative history explains that materials used for the construction of telephone and telegraph lines were intended to remain taxable, even after the enactment of AB 1086.

## DISPOSITION

The judgment is affirmed. CDTFA is entitled to recover its costs on appeal.

GUERRERO, J.

WE CONCUR:

NARES, Acting P.J.

DATO, J.

---

Because we decide this appeal based on the plain language of section 6016.5 in CDTFA's favor, it is unnecessary for us to determine the degree of deference that we may afford to CDTFA's interpretations of section 6016.5, including its interpretations set forth in annotation 190.1047 of the CDTFA's Business Taxes Law Guide, and a September 15, 1965 letter from CDTFA tax counsel E.H. Stetson discussing annotation 295.1400. We therefore deny CDTFA's request for judicial notice of those items.

Filed 10/24/18

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MCI COMMUNICATIONS SERVICES, INC., <br><br>     Plaintiff and Appellant, <br><br>     v. <br><br> CALIFORNIA DEPARTMENT OF TAX AND FEE ADMINISTRATION, <br><br>     Defendant and Respondent. | D072402 <br><br><br> (Super. Ct. No. 37-2015-00039212-CU-MC-CTL) <br><br> ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed September 24, 2018, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

NARES, Acting P. J.

Copies to: All parties