Filed 2/23/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>WESLEY McDOWELL, JR.,<br><br>    Defendant and Appellant. | G062263<br><br>(Super. Ct. No. 18CF0916)<br><br>O P I N I O N |

        Appeal from a judgment of the Superior Court of Orange County, Maria D. Hernandez, Judge.  Affirmed.

        Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

        Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel J. Hilton and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

Wesley McDowell, Jr., challenges his sentence totaling 23 years to life in prison for human trafficking of a minor (Pen. Code, § 236.1, subd. (c)) (section 236.1(c)), and other offenses. Citing newly enacted Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81), McDowell contends the trial court erred by refusing to dismiss his elevated sentence of 15 years to life under section 236.1(c)(2), dealing with human trafficking of a minor with aggravating circumstances.[1] He claims Senate Bill 81 categorically compels sentencing courts to dismiss enhancements under specified circumstances, applicable to his elevated sentence. Alternatively, he asserts Senate Bill 81 greatly limits sentencing courts' discretion not to strike enhancements under specified circumstances, and he argues the court's refusal to dismiss his elevated sentence was an abuse of discretion under this new legislation.

As explained below, we hold that by its terms, Senate Bill 81 applies only to enhancements—additional terms of imprisonment added to the base term. As McDowell concedes, section 236.1(c)(2) provides an alternative punishment for the underlying offense and is therefore not an enhancement. Thus, Senate Bill 81 did not apply to McDowell's elevated sentence under section 236.1(c)(2).[2] Accordingly, we affirm.

## FACTS

### I. *McDowell's Convictions and Initial Sentence*

In 2019, a jury convicted McDowell of human trafficking of a minor (§ 236.1(c)), rape (Pen. Code, § 261, subd. (a)(2)), and other offenses. The jury also found true various sentencing allegations, including that McDowell used force, fear, or other similar means to commit the human trafficking offense (§ 236.1(c)(2)), and was

---

[1]     As discussed below, human trafficking of a minor is generally punishable by 5, 8, or 12 years in prison. (§ 236.1(c)(1).)

[2]     Given our conclusion, we need not decide whether and under what circumstances Senate Bill 81 compels the dismissal of enhancements.

armed with a firearm in the commission of some of the offenses (Pen. Code, § 12022, subd. (a)(1)).

As relevant here, the trial court initially sentenced McDowell to a total of 25 years to life in prison. This sentence included an indeterminate term of 15 years to life under the alternative penalty provision of section 236.1(c)(2), and a one-year firearm enhancement under Penal Code section 12022, subdivision (a)(1).[3] On appeal, we remanded for resentencing because of an error not pertinent here.

II. *Resentencing*

On remand, McDowell argued that newly enacted Senate Bill 81 required the trial court to dismiss the elevated sentence of 15 years to life under section 236.1(c)(2), which he characterized as an "enhancement."[4] Alternatively, he contended that even if the court had discretion whether to dismiss this elevated sentence, Senate Bill 81 required it to afford great weight to applicable mitigating circumstances listed in the statute.

The trial court declined to dismiss the elevated sentence under section 236.1(c)(2). The court concluded Senate Bill 81 did not categorically require it to dismiss any enhancement. And it found that dismissing McDowell's elevated sentence

---

[3]     As discussed below, a penalty provision "'sets forth an alternate penalty for the underlying felony itself, when the jury has determined that the defendant has satisfied the conditions specified in the statute.' [Citation.]" (*People v. Jones* (2009) 47 Cal.4th 566, 578 (*Jones*), italics omitted.)

[4]     As explained below, Senate Bill 81 added Penal Code section 1385, subdivision (c) (section 1385(c)), which provides that a court "shall dismiss an enhancement if it is in the furtherance of justice to do so . . . ." (§ 1385(c)(1), amended by Stats. 2021, ch. 721, § 1.) That provision further instructs that in deciding whether to dismiss the enhancement, the court must consider and afford great weight to certain mitigating circumstances, unless dismissing the enhancement would endanger public safety. (§ 1385(c)(2).) Two of the mitigating circumstances—that the enhancement could result in a sentence of over 20 years and that multiple enhancements were alleged—also included additional mandatory language, which we note below. (§ 1385(c)(2)(B) & (C).)

3

would endanger public safety, stating it had "grave concerns" in light of McDowell's violent and coercive conduct against his minor victim over a lengthy period. Thus, the court sentenced McDowell to a total of 23 years to life in prison, which included the elevated sentence and the one-year firearm enhancement, among other elements.[5] It also corrected the error that triggered the resentencing. McDowell timely appealed.

DISCUSSION

McDowell contends the trial court erred by failing to dismiss his elevated punishment under section 236.1(c)(2). He asserts that Senate Bill 81 required the court to strike this heightened penalty, either as a categorical mandate or because it was an abuse of discretion not to do so in his case given the new legislation.

The Attorney General responds that Senate Bill 81 applies only to enhancements—additional terms of imprisonment added to the base term—and thus does not apply to the penalty provision in section 236.1(c)(2), which provides an alternative punishment for the underlying offense. As explained below, we agree with the Attorney General and therefore affirm.[6]

I. *Governing Principles*

A. *Senate Bill 81*

Enacted in 2021, Senate Bill 81 amended Penal Code section 1385 to guide sentencing courts in deciding whether to dismiss an enhancement. (*People v. Lipscomb* (2022) 87 Cal.App.5th 9, 16.) Under new section 1385(c), a court "shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (§ 1385(c)(1).) In deciding whether

---

[5] The trial court's original sentence included the middle term of nine years in prison for McDowell's rape conviction. On resentencing, the court selected the low term of seven years for that offense.

[6] Although the trial court declined to dismiss McDowell's elevated sentence on a different ground, "we review the trial judge's ruling, not his [or her] reasons for so ruling." (*People v. Ross* (1994) 28 Cal.App.4th 1151, 1157.)

4

to strike the enhancement, "the court shall consider and afford great weight to evidence . . . that any of [nine enumerated] mitigating circumstances . . . are present."[7] (§ 1385(c)(2).) "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (*Ibid.*) Alongside two of the enumerated circumstances, the Legislature included additional, mandatory language: when multiple enhancements are alleged, "all enhancements beyond a single enhancement shall be dismissed" (§ 1385(c)(2)(B)), and when an enhancement could result in a sentence of over 20 years, "the enhancement shall be dismissed" (§ 1385(c)(2)(C)).

B. *Penalties for Human Trafficking of a Minor Under Section 236.1(c)*

Section 236.1 proscribes and sets forth the penalties for different kinds of human trafficking offenses. As relevant here, section 236.1(c), which deals with causing a minor to engage in a commercial sex act, provides for a sentence of 5, 8, or 12 years. (§ 236.1(c)(1).) But when a perpetrator uses force, fear, or one of several other

---

[7]  The enumerated circumstances are: "(A) Application of the enhancement would result in a discriminatory racial impact . . . . [¶] (B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed. [¶] (C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed. [¶] (D) The current offense is connected to mental illness. [¶] (E) The current offense is connected to prior victimization or childhood trauma. (F) The current offense is not a violent felony . . . . [¶] (G) The defendant was a juvenile when they committed the current offense or any prior offenses, including . . . juvenile adjudications, that trigger the enhancement . . . . [¶] (H) The enhancement is based on a prior conviction that is over five years old. [¶] (I) Though a firearm was used in the current offense, it was inoperable or unloaded." (§ 1385(c)(2)(A)-(I).)

Senate Bill 81 initially listed these circumstances under section 1385(c)(3), apparently because of a clerical error. (*People v. Sek* (2022) 74 Cal.App.5th 657, 674, fn. 7.). A later amendment moved them to section 1385(c)(2), with no change in substance. (*People v. Lipscomb, supra*, 87 Cal.App.5th at p. 16, fn. 3.)

aggravating means to accomplish his or her aims, subdivision (c)(2) provides for a harsher sentence of 15 years to life.  (§ 236.1(c)(2).)

C.  *Standard of Review and Principles of Statutory Interpretation*

Whether Senate Bill 81 applies to a sentence under section 236.1(c)(2) is a question of statutory interpretation, which we review de novo.  (*People v. Tirado* (2022) 12 Cal.5th 688, 694.)  "'[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.'  [Citation.]  In determining that intent, we first examine the words of the respective statutes:  'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.]'"  (*People v. Coronado* (1995) 12 Cal.4th 145, 151.)  "If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.  [Citation.]"  (*Ibid.*)

"When . . . a term has developed a particular meaning in the law, we generally presume the legislative body used the term in that sense rather than relying on ordinary usage.  'It is a well-recognized rule of construction that after the courts have construed the meaning of any particular word, or expression, and the legislature subsequently undertakes to use these exact words in the same connection, the presumption is almost irresistible that it used them in the precise and technical sense which had been placed upon them by the courts.'  [Citations.]"  (*In re Friend* (2021) 11 Cal.5th 720, 730.)  Penal Code section 7, subdivision (16), similarly instructs, "Words and phrases . . . as may have acquired a peculiar and appropriate meaning in law, must be construed according to such peculiar and appropriate meaning."

II.  *Analysis*

We agree with the Attorney General that Senate Bill 81 does not apply to McDowell's sentence under section 236.1(c)(2).  By its terms, section 1385(c) applies only to an "enhancement."  (Accord, *People v. Burke* (2023) 89 Cal.App.5th 237, 243

6

(*Burke*).) "The term 'enhancement' has a well-established technical meaning in California law": it is """"an additional term of imprisonment added to the base term.""" [Citations.]" (*Burke*, at p. 243; accord, *Jones, supra*, 47 Cal.4th at p. 578 [enhancement is "a punishment added to the base term"].) And section 236.1(c)(2) is a penalty provision—not an enhancement—because it prescribes an alternate penalty for the underlying felony, rather than an addition to the base term. (See *Jones*, at p. 578 ["'Unlike an enhancement, which provides for an *additional term* of imprisonment, [a penalty provision] sets forth an alternate penalty *for the underlying felony itself*, when the jury has determined that the defendant has satisfied the conditions specified in the statute'"].) Accordingly, the provisions of section 1385(c) have no application to sentences under section 236.1(c)(2).

McDowell does not contend that section 236.1(c)(2) is an enhancement. He claims, however, that the Legislature intended the term "enhancement" in section 1385(c) to include alternative sentencing schemes, in addition to true enhancements under the traditional definition.

In support, McDowell argues that applying the established definition of enhancement would render two provisions of the section 1385(c) surplusage. First, McDowell notes that section 1385(c)(1) provides for dismissal of an enhancement in the furtherance of justice, "except if dismissal of that enhancement is prohibited by any initiative statute." (*Ibid.*) Second, he notes that under section 1385(c)(2)(G), in deciding whether to strike an enhancement, a court must give great weight to a finding that a defendant "was a juvenile when they committed . . . prior offenses, including . . . juvenile adjudications, that trigger the enhancement." (*Ibid.*) McDowell represents that he is unaware of any traditional enhancements for which dismissal is prohibited by an initiative statute or of any juvenile adjudication that can increase a defendant's sentence other than a prior strike conviction under the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), which provides for alternative penalties and is not

7

a traditional enhancement. He cites the cannon against surplusage, under which we look to "'accord[] significance, if possible, to every word, phrase[,] and sentence in pursuance of the legislative purpose'" and to avoid a construction that makes some words surplusage. (*People v. Valencia* (2017) 3 Cal.5th 347, 357.)

Even assuming the phrases McDowell references would be rendered surplusage if section 1385(c) applied only to traditional enhancements, our reading of the statute remains unchanged. The canon against surplusage, like other canons of construction, is an interpretative aid; it is not absolute and "'"will be applied only if it results in a *reasonable* reading of the legislation" [citation].' [Citations.]" (*MCI Communications Services, Inc. v. California Dept. of Tax & Fee Administration* (2018) 28 Cal.App.5th 635, 650.) McDowell's proposed interpretation—reading "enhancement" to mean any statutory mechanism that provides for a harsher sentence—is at odds with the term's established legal meaning and the Penal Code's instruction that we follow that established meaning.

California courts have used the same definition of enhancement—an additional punishment added to the base term—for decades. (See, e.g., *In re Anthony R.* (1984) 154 Cal.App.3d 772, 776 [describing this "well-established meaning" of enhancement].) As noted, the presumption that the Legislature used words according to the meaning courts have given them has been described by our Supreme Court as "almost irresistible." (*In re Friend, supra*, 11 Cal.5th at p. 730.) And the Penal Code itself instructs that words with a special meaning in law "must be construed" according to that meaning. (Pen. Code, § 7, subd. (16).) Given these controlling principles, we will not conclude that the Legislature intended to give the word "enhancement" a different and much broader meaning without any express indication in the text of the statute.

Based on this analysis, courts addressing the issue in the context of the Three Strikes law reached a similar conclusion, holding that Senate Bill 81 did not apply to prior strike convictions. (*People v. Dain* (Jan. 31, 2024, A168286) ___ Cal.App.5th

8

___, petn. for rehg. pending; *People v. Olay*, 98 Cal.App.5th 60, 67 (*Olay*), petn. for review pending; *Burke, supra*, 89 Cal.App.5th at p. 243.) The court in *Burke*, for example, applied the presumption that "the Legislature was aware of, and acquiesced in, both th[e] established judicial definition of enhancement and the distinction between an enhancement and an alternative sentencing scheme" and noted that "[t]he Legislature did not otherwise define the word 'enhancement' in [Penal Code] section 1385." (*Burke,* at p. 243.) It therefore concluded that section 1385(c)'s reference to enhancement did not include Three Strike priors. (*Burke,* at p. 243.)

McDowell draws our attention to Senate Bill 81's legislative history, but that legislative history cannot carry the day for him. True, two legislative reports characterized alternative penalties as enhancements. (Sen. Com. on Public Safety, Rep. on Sen. Bill 81, p. 3.) [enhancements "can range from adding a specified number of years to a person's sentence . . . [to] converting a determinate sentence into a life sentence"]; Sen. Com. on Appropriations, Rep. on Sen. Bill 81, p. 1 [similar].) And several included a statement from the bill's author that Senate Bill 81 codified a recommendation by the Committee on the Revision of the Penal Code. (E.g., Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill 81, May 25, 2021, p. 4.) In turn, the report in which that committee presented its recommendations repeatedly referred to Three Strikes priors as enhancements. (Com. on the Revision of Pen. Code, 2020 Annual Report and Recommendations (Feb. 2021), pp. 38-40, 42.) But a June 2021 report of the Assembly Committee on Public Safety—the only legislative report expressly addressing the question before us—provided the established definition of an "'enhancement'" and stated that "[t]he presumption created by [Senate Bill 81] applies to enhancements, but does not encompass alternative penalty schemes." (Assem. Com. on Public Safety, Analysis of Sen. Bill 81, pp. 5-6.) We agree with the *Olay* court's analysis of this legislative history: "If . . . the Legislature intended to depart from existing law by adopting a more expansive understanding of th[e] term [enhancement],

9

presumably, the legislative history would have expressed this intent far less obliquely. [Citation.] More notably, the legislative history would not have expressed the exact opposite: an intent to adopt the narrower, legal meaning of the term enhancement for purposes of section 1385[(c)]. [Citation.]" (*Olay, supra*, 98 Cal.App.5th at p. 69.)

Finally, McDowell contends we must apply the rule of lenity, under which courts resolve doubts as to the meaning of a statute in a criminal defendant's favor. (*People v. Nettles* (2015) 240 Cal.App.4th 402, 407.) But "'that rule applies "only if two reasonable interpretations of the statute stand in relative equipoise." [Citation.]' [Citations.]" (*People v. Soria* (2010) 48 Cal.4th 58, 65.) "It has no application where, 'as here, a court "can fairly discern a contrary legislative intent."'" [Citation.]" (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1102, fn. 30.) In light of the principles discussed above, McDowell's expansive construction of the term "enhancement" in section 1385(c) is not in relative equipoise with a reading that uses the term's established meaning.

Accordingly, we conclude that section 1385(c) did not apply to McDowell's sentence under section 236.1(c)(2). As McDowell provides no other basis for his argument that the trial court was required to dismiss his elevated sentence under this provision, we affirm.[8]

---

[8] McDowell's argument that the trial court abused its discretion rests on his incorrect assumption that section 1385(c) constrained the court's discretion. He asserts no abuse of discretion independent from this provision. McDowell also does not argue that section 1385(c) required the trial court to dismiss his one-year firearm enhancement under Penal Code section 12022, subdivision (a)(1). We therefore do not consider these issues.

DISPOSITION

The judgment is affirmed.


                                                      O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


GOODING, J.

11